# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

MICHAEL BOYD,

    Plaintiff,

            v.             No. 2:15-CV-2

WELLS FARGO BANK, N.A.,

    Defendant.

## ORDER

Before the Court in this Fair Credit Reporting Act ("FCRA") case is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo")[1] Motion for Summary Judgment, dkt. no. 67. The motion is fully briefed and ripe for disposition. Dkt. Nos. 69, 71, 73, 75-76. For the reasons below, the motion will be **GRANTED**. Additionally, the Court will **EXCLUDE in part** testimony from Plaintiff Michael Boyd ("Boyd").

## Factual Background

The Court considers all undisputed, admissible, properly authenticated record evidence. It thus overrules Boyd's objection that excerpts from his deposition should not be used

---

[1] The Court dismissed Defendant Experian Information Solutions, Inc., on October 24, 2016. Dkt. No. 78.

because only part of the transcript is in the record. Dkt. No. 73-1 at 1-2 ("Wells Fargo only filed certain parts of the Plaintiff's deposition . . . but . . . the entire deposition should be filed if it is going to be considered . . . ."). Local Rule 32.1 allows transcript portions to be considered at this stage.

**Someone Obtains a Credit Card in Boyd's Name in 2007**

Boyd is a nuclear submarine missile technician. Dkt. No. 69 at 18:12-20:02. On September 8, 2006, he executed a power of attorney authorizing his then-wife, Siana Boyd, "to borrow money and to execute in [his] name any instrument evidencing indebtedness incurred on [his] behalf." Dkt. No. 67-3 ¶ 4(c); see also Dkt. No. 67-1 ¶ 2; Dkt. No. 69-1 ¶ 2. The power remained effective until September 5, 2007. Dkt. No. 67-3 at 7. Siana filed for divorce in November 2007. Dkt. No. 67-1 ¶ 3; Dkt. No. 69-1 ¶ 3.

In October 2007, after Siana's power of attorney expired but before she filed for divorce, someone opened a new credit card in Boyd's name. Dkt. No. 67-4 at 69:10-15. Boyd did not know about the card until returning home from sea in January 2008. Id. at 21:25-22:03. He learned that the bill was 60 days late. Id. at 22:05-06.

72A
ev. 8/82)

**Wells Fargo Investigates and Holds Boyd Responsible**

Boyd contacted Wells Fargo. Id. at 23:01-02. Wells Fargo replied on March 4, 2008. Id. at 16. It told Boyd that it had investigated and found him responsible for the account balance. Id. The next month, Boyd filed with Wells Fargo an "affidavit of unauthorized use." Dkt. No. 67 at 3; Dkt. No. 67-4 at 15. Due to Boyd's error, the affidavit gave the wrong number for the disputed account. Dkt. No. 67-4 at 27:11-19. Boyd sued Wells Fargo in Georgia state court on September 4, 2009, alleging that Wells Fargo had misinformed credit reporting agencies of debt supposedly owed by Boyd. Dkt. No. 67-5. The outcome of this proceeding is not apparent.[2]

Wells Fargo "did not receive any disputes regarding the Account between October 2009 and August 2014." Dkt. No. 67-2

---

[2] Boyd claims that Wells Fargo never appeared, relying on a court clerk's affidavit. Dkt. No. 69-1 at 3. However, he fails to give a record cite to the affidavit, as required by Local Rule 56.1. As a result of Boyd's failure to direct the Court to the affidavit's location, the Court expended considerable time and effort searching. It reviewed the entire docket and searched clerk office files. Its effort proved unsuccessful.

The Court will not undertake any lengthier of a search, as this is the evil that Local Rule 56.1 is intended to prevent:

> [T]he rule's clear procedural directive is intended to reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching. The rule thus reflects a clear policy that it is not the court's obligation to scour the record for a factual dispute that precludes summary judgment. Rather, it is the nonmovant's obligation to specifically bring the factual dispute to the court's attention by rebutting the movant's factual statements on a paragraph by paragraph basis and with specific citations to the record.

Joseph v. Napolitano, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012) (emphasis added) (interpreting parallel local rule); see also Raiford v. Nat'l Hills Exch., LLC, No. CV 111-152, 2013 WL 1286204, at *17 (S.D. Ga. Mar. 27, 2013).

⊃72A
.ev. 8/82)

¶ 20. During this time period, Boyd alleges that his security clearance was called into question because of his credit, he was denied favorable credit terms and loans, and he had to borrow home-closing costs. Dkt. No. 67-4 at 35:18–36:24; Dkt. No. 67-7 at 7; Dkt. No. 67-8 at 2–3.

**In 2014, Boyd Again Contests the Debt**

On September 16, 2014, Wells Fargo received an Automated Consumer Dispute Verification ("ACDV") from Equifax Information Solutions, Inc. ("Equifax"), a credit reporting agency. Dkt. No. 67-2 ¶ 8 and p. 8.[3] The ACDV informed Wells Fargo that Boyd disputed the account debt on the ground: "Not liable for account (i.e. ex-spouse, business)." Dkt. No. 67-2 at 8. Attached to the ACDV was the image of a letter from Boyd dated September 5, 2014. Dkt. No. 67-6 at 18. It read: "I have no liability on this account. I did not open this account. I have not used this account." Id.

Wells Fargo reviewed the ACDV dispute code, the letter, and its own records. Dkt. No. 67-2 ¶ 13. It confirmed that Equifax had correctly identified Boyd. Id. ¶ 14. Wells Fargo "modified the date of birth, street address, and compliance

---

[3] Boyd argues that the ACDV is not authenticated. Dkt. No. 69-1 ¶ 19. Wells Fargo's Vice President for Consumer Credit Solutions testified that he is familiar with the types of business records Wells Fargo keeps, reviewed said business records, and the ACDV filed with the Court is authentic. Dkt. No. 67-2 ¶¶ 3, 4–5, 8. This authenticates the ACDV. See In re Ulberg, Bankr. No. 10-53637, 2013 WL 5913900, at *6 (Bankr. E.D. Cal. Oct. 22, 2013), adopted, No. 2:13-CV-02219, 2014 WL 545905 (E.D. Cal. Feb. 10, 2014); FDIC v. Moore Pharms., Inc., No. 2:12-CV-0067, 2013 WL 1195636, at *2 (D. Nev. Mar. 22, 2013).

⊃ 72A
.ev. 8/82)

code that it had been reporting to Equifax, but . . . did not remove the Account from Mr. Boyd's credit file." Id. ¶ 18. The account was ultimately removed from Boyd's file in December 2014, as seven years had passed since the first delinquency. Dkt. No. 67-6 ¶ 14.

Boyd sued Wells Fargo on January 5, 2015. Dkt. No. 1. He alleged false credit reporting in violation of FCRA. Id. ¶ 11. He sought more than $650,000 in total damages and attorneys' fees. Id. at 4.

Along with the alleged injuries summarized above, Boyd claimed that he had to apply for a January 2015 loan from a company that "caters to customers who do not have good credit ratings, and charges much higher interest rates." Dkt. No. 69-1 ¶ 28. According to that company, Boyd's "credit was perfect" and he could not have gotten better terms from it than he did. Dkt. No. 67-9 at 26:02-09.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

Ɔ 72A
.ev. 8/82)

(1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000). "Documents which are not properly authenticated and verified . . . should not be considered . . . ." Luque v. Hercules, Inc., 12 F. Supp. 2d 1351, 1355-56 (S.D. Ga. 1997) (citing First Nat'l Life Ins. Co. v. Cal. Pac. Life Ins. Co., 876 F.2d 877, 881 (11th Cir. 1989); Davis v. Howard, 561 F.2d 565, 569 (5th Cir. 1977) (per curiam)).

The movant must demonstrate the absence of a genuine issue of material fact by showing the court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).

If it does so, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. It can do so in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was

⊃ 72A
.ev. 8/82)

'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of [her] conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

### I.   BOYD'S AFFIDAVIT IS PARTIALLY EXCLUDED.

Before turning to the Motion for Summary Judgment, the Court addresses Wells Fargo's contention (dkt. no. 72) that the Court should not consider two full paragraphs and one partial paragraph of Boyd's affidavit in opposition to summary judgment (dkt. no. 69-2).[4]  For the reasons that follow, the contested testimony is **EXCLUDED in part.**

---

[4] An affidavit cannot be stricken, because it is not a pleading. Hawk v. Atlanta Peach Movers, Inc., No. 1:10-CV-0239, 2011 WL 1533024, at *1 (N.D. Ga. Apr. 21, 2011), aff'd, 469 F. App'x 783 (11th Cir. 2012) (per curiam) (unpublished opinion).  The Court therefore denies Wells Fargo's motion to strike, but still "consider[s] [it] insofar as it is a notice of

⊃ 72A
.ev. 8/82)

## A. The Court Accords Paragraph 3 Minimal Weight.

Paragraph 3 will be included, but accorded only minimal weight because the letter to which it refers is absent and a postal receipt is no substitute. Paragraph 3 states in part that Boyd "sent a letter to Wells Fargo Bank by certified mail demanding that [the debt at issue] be removed from [his] credit file and again stated that [he] did not open [the] account or use it in any way." Dkt. No. 69-2 ¶ 3. The affidavit attaches a June 2008 receipt for mail to "Wells Fargo." Id. at 4.

Boyd argues for this testimony to be considered because "[c]ounsel for Wells Fargo made the letter an Exhibit to [Boyd's] deposition, and asked [Boyd] about the Exhibit." Dkt. No. 73 at 2. Wells Fargo replies that Boyd "does not identify [the] letter within the record." Dkt. No. 75 at 5.

The testimony will be considered, but accorded only minimal weight, because the letter cannot be found, and Boyd's statement is of little significance by itself.[5] The Court cannot locate the letter, despite having reviewed the entire docket and its clerk office files, and Boyd has not revealed its location. For its part, the postal receipt is not

---

objection." Id. at *2; see also Zottola v. Anesthesia Consultants of Savannah, P.C., 169 F. Supp. 3d 1348, 1357 (S.D. Ga. 2013) ("[C]ourts tend to treat motions to strike as objections . . . .").

[5] Given that the Court is not giving the testimony material weight, it declines to address Wells Fargo's best evidence rule contention regarding the testimony. See Dkt. No. 72 at 5-6.

8

"evidence sufficient to support a finding that the [item of mail it is for] is what [Boyd] claims it is"—a letter reiterating his debt dispute. Fed. R. Evid. 901(a). In fact, given the receipt's lack of information regarding the mailed item's weight, dimensions, value, or character, the package that it was for could have just as easily contained anything. Even if the receipt did somehow prove that Boyd sent Wells Fargo a letter, it could not prove the letter's contents, any more than the cover is a basis for judging the book. See George Eliot, The Mill on the Floss ch. 3 (1860), available at http://www.gutenberg.org/files/6688/6688-h/6688-h.htm.

This leaves only Boyd's statement that he sent a letter to Wells Fargo again disputing the debt at issue here. This is of little significance, because there is no evidence that Wells Fargo received the letter or Boyd gave Wells Fargo reason to doubt the validity of its concluded investigation. The Court will not exclude this part of Paragraph 3, but this does exceedingly little to aid Boyd's case.

**B. The Court Includes Paragraph 4.**

Paragraph 4 will be included, but it, too, is of little weight. Paragraph 4 testifies that Siana's divorce attorney, Garnett Harrison, "sent Wells Fargo her check in the amount of $1,500.00 to pay the account, since she had learned of the

Ɔ 72A
.ev. 8/82)

fact that the account was not authorized . . . and Siana . . . did not have a valid power of attorney." Dkt. No. 69-2 ¶ 4.

Some of this testimony is hearsay, and some of it may fall outside of Boyd's personal knowledge. However, hearsay and other inadmissible evidence "can be considered at the summary judgment stage as long as [it] is otherwise admissible and will be presented in an admissible form at trial." Nash-Utterback v. Sch. Bd. of Palm Beach Cty., No. 11-CV-80513, 2012 WL 12865852, at *18 (S.D. Fla. June 8, 2012); cf. Fed. R. Civ. P. 56(c)(2). Harrison's opinions "may not be hearsay if [Boyd] calls [her] as [a] witness[ ]," so the Court will consider them. Id. Similarly, Harrison could authenticate the correspondence and check Boyd attaches as exhibits. Dkt. No. 69-2 at 6-8. And Boyd could establish that his testimony is within his personal knowledge. The Court thus includes all of the evidence in its analysis.

However, all that this evidence shows is that Harrison believed Boyd, sent "Merchant Services"[6] a letter (addressed "Dear [no name follows]") stating that Siana's power of attorney had expired, and then cut a check to Wells Fargo. See id.; id. ¶ 4. It does not show that Wells Fargo received the check, was notified that Siana's power of attorney had expired, or otherwise received reason to doubt the accuracy of

---

[6] Boyd testified that he does not know who Merchant Services is. Dkt. No. 73-1 at 31:6-7.

⊃72A
.ev. 8/82)

its 2008 investigation.  Thus, this evidence, too, is only of the slightest weight.

### C. The Court Partially Excludes Paragraph 5.

Paragraph 5 will only be excluded to the extent that it refers to Boyd's credit score, as this is hearsay.  Paragraph 5 discusses the over-25% interest rate on a 2015 loan Boyd received, attributing it to his "very low" credit score.  Dkt. No. 69-2 ¶ 5.  Boyd then testifies that since Wells Fargo removed the disputed debt from his file, "[his] credit score has jumped from approximately 580 to approximately 710" and he "can now borrow money . . . at approximately 12% a year."  <u>Id.</u>

Wells Fargo seeks exclusion for four reasons: Federal Rule of Civil Procedure 37(c), Boyd's supposed defiance of this Court's order, lack of authentication, and hearsay.  Dkt. No. 72 at 2-4; Dkt. No. 75 at 4.  Only the last holds weight, and it only requires excluding the parts of Paragraph 5 referring to Boyd's credit score.

### i. Rule 37(c) does not allow exclusion here.

Wells Fargo first seeks exclusion by relying on Federal Rule of Civil Procedure 37(c).  Dkt. No. 72 at 3.  The Rule provides, "If a party fails to provide information . . . <u>as required by Rule 26(a) or (e)</u>, the party is not allowed to use that information . . . to supply evidence on a motion . . . ."  Fed. R. Civ. P. 37(c)(1) (emphasis added); <u>contrast</u> Dkt. No.

ᴐ 72A
.ev. 8/82)

72 at 3 (characterizing the Rule in Wells Fargo's brief as: "[I]f a party fails to provide information during discovery, the party is not allowed to use that information . . . .").

But Boyd did not violate Rule 26(a) or (e). These provisions only require a party to disclose documents that it "may use to support its claims." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Boyd never indicated that he may use documentation of his credit history to support his claims. See Dkt. No. 67-7 at 21-23 (requesting identification of all documents that could be relevant to Boyd's case), 6-8 (responding without identifying any unproduced documents); Dkt. No. 67-8 at 2-3 (supplementing responses without doing so). He apparently intends to rely on his testimony. Without any violation of Rule 26(a) or (e), there cannot be a Rule 37(c) sanction. This is not a reason to exclude Paragraph 5.

### ii. Boyd did not defy this Court's Order.

Wells Fargo next drops a bombshell: "Mr. Boyd . . . refus[ed] to comply with this Court's Order." Dkt. No. 75 at 4. This is an extremely serious claim. It is also baseless.

True, obtaining discovery from Boyd proved difficult. As the Court has already observed, Boyd "repeatedly failed to respond to . . . Wells Fargo's discovery requests and failed to correct those failures despite numerous opportunities to do so." Dkt. No. 66 at 1. The stonewall hid Boyd's credit

ɔ 72A
ev. 8/82)

history from the time period relevant to this case—even though he testified that he regularly checked his credit score using a phone application. Dkt. No. 48 at 6. Boyd lacked any legitimate reason for this lockdown. Dkt. No. 66 at 2. (In fairness to Boyd personally, his shortcomings "appear[] to be, in part, the fault of his counsel." Id. at 4.)

But Wells Fargo already unclogged this logjam by moving the Court to compel discovery. First, it sought credit documents. Dkt. No. 34. Then, it requested that the Court order Boyd to sign an authorization so that credit reporting agencies would release them. Dkt. No. 37. According to the audio recordings of oral argument on these motions, Judge Baker attempted to determine the best way to satisfy Wells Fargo's needs given that Boyd was out to sea. Judge Baker and Wells Fargo's counsel discussed having Boyd sign an authorization that would cover multiple years and multiple credit agencies. This is where they left the matter. And this is the solution ultimately found in Judge Baker's order. Contrast Dkt. No. 48 at 6 ("[Boyd] is ORDERED to sign the authorization form allowing Equifax to release his credit history report . . . .") with Dkt. No. 75 at 3 ("Mr. Boyd has never produced any documents evidencing his credit score or history, even in the face of an Order instructing him to do so." (emphasis added)).

13

Boyd signed an authorization. Dkt. No. 72 at 2 n.2. Equifax sent Wells Fargo a credit report. Id. The Court cannot exclude Boyd's testimony on the ground that he defied its order, because he did not.

Wells Fargo complains that the April 27, 2016 report does it no good because, by then, the disputed account had been removed from Boyd's file, and so his score was unrepresentative of the timeframe at issue in this case. Id. But in the four months between receiving the report and filing this motion to strike, Wells Fargo never sought an amended order or other assistance in securing production. It may have never even notified Boyd that it still considered its discovery needs unmet. Wells Fargo thus quietly made the bed in which it must now sleep.

Boyd satisfied this Court's Order, Wells Fargo's eleventh-hour accusation notwithstanding. The Court will not exclude Boyd's testimony on this ground.

### iii. The testimony is sufficiently authenticated.

Wells Fargo's third objection to Paragraph 5 is that Boyd "fail[ed] to provide adequate factual foundation regarding his own testimony" because he "never identifies how he obtained the data regarding his credit history, from whom, or when the data was generated." Dkt. No. 72 at 4 n.3. The Court does not know which legal rule Wells Fargo is silently invoking

14

here.  See Argo v. Gregory, No. CV 212-213, 2014 WL 4467268, at *11 (S.D. Ga. Sept. 10, 2014) ("[T]he onus is upon the parties to formulate arguments.").  To the extent that Wells Fargo means that the testimony exceeds Boyd's personal knowledge, see Fed. R. Evid. 602, this argument fails.  Boyd knows his credit history.  See Dkt. No. 37-3 at 3 (testifying that Boyd checks his credit score monthly); In re Collins, No. 02-50737, 2002 WL 31051032, at *3 (Bankr. M.D.N.C. June 21, 2002) (noting debtor's testimony about her loan amount and what secured the loan); cf. CHR Equip. Fin., Inc. v. C & K Transp., Inc., 448 N.W.2d 693, 695 (Iowa Ct. App. 1989) (allowing experienced businessman/borrower to testify to prevailing commercial interest rate).  This is not a ground for excluding part of Paragraph 5.

### iv. Hearsay

The rule against hearsay *is* a basis for limiting Boyd's testimony—but only regarding his credit score, not his interest rates.  Boyd's testimony relies on "a report from a credit bureau which was never offered in evidence."  Haygood v. Auto-Owners Ins. Co., 995 F.2d 1512, 1516 (11th Cir. 1993). He offers numbers spoken by credit rating agencies not appearing in these proceedings.  These numbers state his credit rating.  Boyd offers them to prove his credit rating.

Ɔ 72A
ev. 8/82)

This is hearsay. Hearsay is inadmissible. Fed. R. Evid. 802. Boyd's Paragraph 5 credit score testimony is excluded.

## II. WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT IS GRANTED.

The Court turns to Wells Fargo's Motion for Summary Judgment. It will be granted because there is no genuine issue of material fact as to whether Wells Fargo's investigation of Boyd's dispute was reasonable, or whether Boyd incurred damages.[7]

### A. Wells Fargo's Investigation Was Reasonable.

There is no genuine issue of material fact as to the reasonableness of Wells Fargo's investigation of the contested debt. FCRA requires those who furnish information to credit reporting agencies, such as Wells Fargo, to investigate if an agency reports a consumer dispute. 15 U.S.C. §§ 1681s-2(a)(8)(E), 1681s-2(b)(1). "[T]he requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1161 (9th Cir. 2009).

---

[7] In addition to his FCRA claim, Boyd alleged a violation of "Georgia law by falsely reporting erroneous information," Dkt. No. 1 ¶ 11, which later briefing implied to have been a defamation claim. See Dkt. No. 9 at 6. This claim, and any other Boyd makes under Georgia law, is not adequately pled and so is DISMISSED. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (observing complaint must "give the defendant fair notice of what the . . . claim is" (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated in other part, Twombly, 550 U.S. at 561-63)).

ɔ 72A
ev. 8/82)

The investigation must only be procedurally reasonable. Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

Reasonability "will vary depending on the circumstances of the case." Id. How deep a furnisher must dig depends partly on whether it is "an original creditor"—as is Wells Fargo here. Id. An original creditor can lean more heavily on its internal records than can a furnisher further down the line. Id. at 1305.

A furnisher can satisfy its FCRA duty by "uncovering documentary evidence that is sufficient to prove that the information is true," or by "relying on personal knowledge sufficient to establish the truth of the information." Id. at 1303. The furnisher must look beyond the ACDV and consider all of the dispute-related information that it has. Id. at 1306.[8] That said, the ACDV limits the furnisher's duty, because "whether an investigation is reasonable will depend on what the furnisher knows about the dispute." Id.

The ACDV here indicated that Boyd contested the debt on the ground that he was "[n]ot liable for the account (i.e. ex-spouse, business)." Dkt. No. 67-2 at 8. Wells Fargo also

---

[8] Here, however, there is no evidence that Wells Fargo ever received a letter from Harrison to "Merchant Services" casting doubt upon Siana's power of attorney. See Dkt. No. 69-2 at 6; discussion supra. The letter is not addressed to anyone, and "Merchant Services" has not been identified in this litigation—likely because Boyd said that he "[doesn't] know who [it] is." See Dkt. No. 69-2 at 6; Dkt. No. 73-1 at 31:6-7.

Ↄ 72A
.ev. 8/82)

knew, based on the attached letter, that Boyd claimed: "I have no liability on this account. I did not open this account. I have not used this account." Dkt. No. 67-6 at 18.

Wells Fargo looked into its records. It confirmed Boyd's identity and updated his contact information. Dkt. No. 67-2 ¶¶ 13-14, 18.[9] Crucially, it also found that it had already conducted a FCRA investigation on the debt and held Boyd liable. Dkt. No. 67-2 at 9 ("Completed investigation of FCRA dispute – Consumer disagrees.").

This was enough. FCRA does not force furnishers to endlessly ride the reinvestigation merry-go-round. To stop Wells Fargo from relying on the 2008 investigation, Boyd had to give it either "reason to doubt the veracity of the initial investigation" or "new information that would have prompted [it] to supplement the initial investigation." Gorman, 584 F.3d at 1160; see also Drew v. Equifax Info. Servs., 690 F.3d 1100, 1108 (9th Cir. 2012). Without his doing so, "[Wells Fargo's] decision not to repeat a previously-conducted

---

[9] By itself, this would not have sufficed. A sister district court did hold that an investigation was reasonable where the furnisher only "verif[ied] that the reported information [was] consistent with the information in its records." Howard v. Pinnacle Credit Servs., LLC, No. 4:09-CV-85, 2010 WL 2600753, at *3 (M.D. Ga. June 24, 2010). But the ACDV there merely read: "Consumer states inaccurate information. Provide or confirm complete ID and account information." Id. at *4; see also Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005) (holding similar investigation reasonable where ACDV only indicated that consumer "was disputing the charge on the basis that the account did not belong to him."). Contrastingly, the ACDV here noted that Boyd pointed to an ex-spouse or business. That triggered a greater duty on Wells Fargo's part.

⊃ 72A
.ev. 8/82)

investigation <u>cannot</u> have been unreasonable." <u>Id.</u> (emphasis added) (affirming summary judgment).

Boyd did not cast a shadow upon the 2008 investigation. Neither the ACDV nor his attached letter called it into question or gave Wells Fargo any new information. In fact, neither even mentioned the earlier inquiry. Wells Fargo is therefore entitled to summary judgment, because its investigation was reasonable as a matter of law.

Boyd complains that Wells Fargo "has never stated what investigation it allegedly did in March of 2008." Dkt. No. 69-1 ¶ 5. But Boyd cannot directly challenge that investigation, because it pre-dated Wells Fargo receiving Equifax's notice of Boyd's dispute. <u>Green v. RBS Nat'l Bank</u>, 288 F. App'x 641, 642 (11th Cir. 2008) (per curiam) (unpublished opinion) ("[The plaintiff] contends that [the defendant] violated § 1681s-2(a) by tendering false information regarding his account. The FCRA, however, does not provide a private right of action to redress such a violation . . . . The FCRA does provide a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency.").

It would not have mattered even if the 2008 investigation had indeed turned out to have been inadequate, as far as the

ᗡ72A
.ev. 8/82)

reasonability of the 2014 investigation is concerned. As explained above, it was Boyd's duty to notify Wells Fargo of the 2008 investigation's inadequacy at the time of his 2014 debt dispute, and he did not do so.

Still, because Boyd rests his case upon Wells Fargo's silence, let the simple reason for it be noted: Boyd never made Wells Fargo speak. Boyd had access to a discovery arsenal. He could have issued subpoenas. He could have sent forth waves of interrogatories. He could have requested document production. If Wells Fargo failed to satisfy him, he could have moved the Court to compel discovery. "Ask, and it will be given to you" is rarely as true in American civic life as it is in modern federal litigation. See Matt. 7:7. It is inexcusable to quietly let discovery pass and then shout that the other party has failed to build one's case. "Ours is an adversary system of justice," and each party is responsible for procuring the evidence it needs. James v. Headley, 410 F.2d 325, 332 n.10 (5th Cir. 1969).

Thus, even if the 2008 investigation's substantive reasonability mattered, the Court would still grant Wells Fargo summary judgment. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the

defendant, as long as the plaintiff has had a full opportunity to conduct discovery." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986) (emphasis added). Boyd could have taken a swing at discovering information about the 2008 investigation, but he instead struck out looking. Wells Fargo's 2014 investigation was reasonable as a matter of law.

**B. There Is No Evidence that Boyd Suffered Damages.**

Wells Fargo is also entitled to summary judgment because of Boyd's "failure to produce evidence of damage resulting from a FCRA violation." Nagle v. Experian Info. Solutions, Inc., 297 F.3d 1305, 1307 (11th Cir. 2002). Boyd alleges actual, punitive, and statutory damages. Dkt. No. 1 at 4. Actual damages are available for negligent FCRA violations, while statutory and punitive are on the table as punishment for willful ones. 15 U.S.C. §§ 1681n, 1681o. Willfulness includes reckless disregard. Collins v. Experian Info. Solutions, Inc., 775 F.3d 1330, 1336 (11th Cir. 2015).

As for actual damages, Boyd mostly alleges injuries that pre-date his 2014 debt dispute. Dkt. No. 67-4 at 35:18-36:24; Dkt. No. 67-7 at 7; Dkt. No. 67-8 at 2-3. These are irrelevant: Lost profits predating the alleged breach of the furnisher's investigation duty "cannot form the basis for recovery under FCRA." Rambarran v. Bank of Am. Corp., No. 07-21798-CIV, 2007 WL 2774256, at *6 (S.D. Fla. Sept. 24, 2007).

Ɔ 72A
ev. 8/82)

Boyd further alleges that in 2015, after disputing the debt, he had to take a high-interest loan from a provider that services people with bad credit. Dkt. No. 69-1 ¶ 28; Dkt. No. 69-2 ¶ 5. According to the provider, Boyd's "credit was perfect" and he got the best terms from it that he could have. Dkt. No. 67-9 at 26:02-09. Without evidence that Boyd applied for a loan from a different provider, "the 'lost opportunity' damages he allege[s] [are] too speculative." Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 475 (2d Cir. 1995); see also Davenport v. Sallie Mae, Inc., 124 F. Supp. 3d 574, 583 (D. Md. 2015), aff'd, 623 F. App'x 94 (4th Cir. 2015) (per curiam) (unpublished opinion).

The last actual damage Boyd alleges is that his interest rate went from over 25% to 12% once the disputed debt was dropped from his file. Dkt. No. 69-2 ¶ 5. But

> [t]here is no indication in the record that any creditor relied on its knowledge of [Boyd's disputed] account in deciding to set his interest rates at a particular level. Because a factfinder would have to engage in impermissible speculation in order for [him] to recover these damages, they cannot withstand summary judgment.

Rambarran v. Bank of Am., N.A., 609 F. Supp. 2d 1253, 1266 (S.D. Fla. 2009).

As for statutory and punitive damages, the Court could not let them survive without holding that a reasonable factfinder could determine that Wells Fargo's 2014

Ɔ 72A
ev. 8/82)

investigation was reckless (or worse). But, for the reasons in Part II.A, the Court has held that Wells Fargo's investigation was reasonable as a matter of law. Thus, Boyd's statutory and punitive damages claims must fail.

Wells Fargo is entitled to summary judgment because Boyd has not created a genuine issue of material fact as to either damages or the reasonability of Wells Fargo's 2014 investigation.

## CONCLUSION

For the reasons set forth above, Wells Fargo's Motion for Summary Judgment, dkt. no. 67, is **GRANTED**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment and to close this case.

**SO ORDERED**, this 14th day of December, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

Ɔ 72A
.ev. 8/82)